# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JAMES WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12-CV-55 |
| | ) |
| ALLEN COUNTY SHERIFF'S OFFICERS | ) |
| OFFICERS GABRIEL FURNISH, JUSTIN | ) |
| REICHARD, THOMAS PLUMMER, BRIAN | ) |
| JARBOE, ROYCE WHITE, TODD LEAMON, | ) |
| HOLLY COONROD, and JEREMY REPAAL, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court[1] on the motions *in limine* filed by Plaintiff James Watson (Docket # 57) and Defendant Officers Gabriel Furnish, Justin Reichard, Thomas Plummer, Brian Jarboe, Royce White, Todd Leamon, Holly Coonrod, and Jeremy Repaal (Docket # 58). For the following reasons, Plaintiff's motion *in limine* will be GRANTED, and Defendants' motion *in limine* will be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

James Watson is suing the Defendant Officers under 42 U.S.C. § 1983. His claims arise out of events that occurred on September 21, 2010, when Allen County Sheriff's Department ("ACSD") officers attempted to serve an arrest warrant on him, resulting in a pursuit that ended after Watson's vehicle collided with a police vehicle. Watson contends that several of the Defendant Officers used excessive force by pulling him out of his vehicle, throwing him to the ground, and repeatedly tasing and kicking him and that two other Defendant Officers failed to

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 31.)

intervene to stop these actions. Defendants deny using excessive force and maintain that any force they used was appropriate given that Watson refused to comply with their orders to exit his vehicle, attempted to grab one of their guns, and resisted their efforts to arrest him.

## II. NATURE OF AN ORDER *IN LIMINE*

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part) (citation omitted). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion *in limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial"). In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion *in limine* is not a final ruling on the admissibility of the evidence that is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion *in limine* is essentially an advisory opinion, "merely speculative in effect," *id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## III. WATSON'S MOTION *IN LIMINE*

### A. *Unopposed Portions of Watson's Motion* in Limine *(Nos. 1, 3-6)*

Defendants do not object to Watson's efforts to preclude references or allusions to their narrative reports or the narrative reports of other officers that may testify; attorney's fees; settlement negotiations; tax considerations; or "send a message" arguments in opening or closing statements. As such, Watson's motion is GRANTED as to these matters.

### B. *Watson's Criminal Record (No. 2)*

Watson also seeks to exclude evidence regarding his criminal record, particularly any prior convictions that do not fall under Federal Rule of Evidence 609(a) or (b), arrests, or other alleged bad acts unaccompanied by conviction. (Pl.'s Mot. in Limine 2.) Defendants object to this request, arguing that they should be able to impeach Watson with his guilty plea to "resisting law enforcement/use of vehicle to commit offense" that arose out of the events of September 21, 2010, because he now alleges he did not resist or attempt to flee during the course of his arrest. (Defs.' Resp. to Pl.'s Mot. in Limine ("Defs.' Resp.") 1-2 (citing Pl.'s Trial Br. 1-2).)

In his Trial Brief, Watson alleges that the Defendant Officers used force against him after he had submitted to their authority and was no longer a threat to, resisting, or fleeing them. (Pl.'s Trial Br. 2.) Defendants argue that Watson entered a guilty plea that addressed the exact act he now contends he did not commit and that, as such, evidence of his conviction for resisting law enforcement can be used to impeach him. (Defs.' Resp. 2.)

Under Indiana law, "[a] guilty plea . . . admits the incriminating facts alleged." *Patton v. State*, 517 N.E.2d 374, 375 (Ind. 1987) (citation omitted). At this point, however, the Court does not know what facts Watson admitted in his guilty plea or what his testimony will be at trial. Therefore, Watson's motion is GRANTED with respect to evidence of his criminal record,

3

including his guilty plea to resisting law enforcement.[2] But if, at trial, Watson denies the conduct he admitted to in his plea hearing on the resisting law enforcement charge, Defendants may then seek to be relieved of this part of the Order for purposes of impeachment. *See More v. City of Braidwood*, No. 08 C 5203, 2010 WL 3547964, at *3 (N.D. Ill. Sept. 7, 2010) (denying, in an excessive force and false arrest case, plaintiff's motion to exclude his disorderly conduct conviction arising from the disputed arrest to the extent that the defendants would use the conviction to impeach the plaintiff if he denied the conduct); *see also Allen v. Noll*, 1:05-CV-18-TS, 2006 WL 1707949, at *8 (N.D. Ind. June 21, 2006) ("To allow Plaintiff to present evidence against the Defendant that so clearly contradicts the facts admitted when he pled guilty[ ] disrespects the judicial process and makes it appear to be a game.").

## IV. DEFENDANTS' MOTION *IN LIMINE*

### A. *Unopposed Portions of Defendants' Motion* in Limine *(Nos. 1-4, 6-7, 9)*

Watson does not object to Defendants' efforts to preclude references or allusions to other lawsuits, claims, tort claims, or settlements involving the Allen County Sheriff or ACSD members and any other claims brought against the Allen County Sheriff, the ACSD, and the named Officers; all identifying information, including Social Security numbers, home addresses, and home phone numbers for all the ACSD's witnesses in this case; settlement demands, offers negotiations, or communications concerning settlement offers; evidence that the Allen County Sheriff and all ACSD employees, including the named Officers, are covered by the Allen County indemnification policy; any "send a message" arguments; stories in the media of other police action or excessive force allegations involving the use of tasers by the ACSD or other law

---

[2] Neither party identifies any prior convictions Watson has that would properly be admitted for impeachment purposes under Rule 609.

enforcement agencies; and any evidence of the parties' financial conditions. As such, Defendants' motion is GRANTED as to these matters.

### B. References to the Lack of a Video, Audio, or Other Recording (No. 5)

Defendants acknowledge that both parties plan to use video recordings of the events surrounding Watson's apprehension and arrest on September 21, 2010, but seek to preclude Watson from making any reference to the Defendants' lack of a video, audio, or other recording of these events. (Defs.' Mot. in Limine 2.) Watson responds that, to the extent that the squad car videos from his pursuit do not show everything one would expect to be reflected—such as what happened after the pursuit ended and Watson was outside his vehicle—the absence of any preserved images or audio recordings should be fair game for trial, particularly because Defendants had control over whether their squad car videos were recording and whether those videos were preserved. (Pl.'s Resp. to Defs.' Mot. in Limine ("Pl.'s Resp.") 1-2.) Watson further maintains that he should be permitted to argue the issue of spoliation at trial by exploring whether some relevant video or audio material from his arrest was generated, but not preserved. (Pl.'s Resp. 2-3.)

In reply, Defendants argue that no squad car videos ever existed—the police vehicles were either not equipped with cameras or were not trained in that direction—so no spoliation could have occurred. (Defs.' Reply in Supp. of Mot. in Limine 1-2.)

Nevertheless, Watson should be permitted to ask Defendants, and other officers that testify, whether additional recordings of his pursuit and apprehension were made and, if so, what happened to them. But Watson's assertion that he should be allowed to suggest or imply spoliation of the recordings at trial would be improper as the probative value of any such evidence, at least on this record, is substantially outweighed by its potential to confuse the issues,

mislead the jury, or unduly delay the trial. FED. R. EVID. 403.

Although "[i]t is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable," 29 AM. JUR. 2D *Evidence* § 256, the mere fact that evidence was destroyed is insufficient to create the unfavorable inference, *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002); *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001). "Rather, to draw such an inference, the [evidence] must have [been] destroyed . . . in bad faith." *Park*, 297 F.3d at 615; *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982). "The crucial element is not that evidence was destroyed but rather the reason for the destruction." *S.C. Johnson & Son, Inc.*, 695 F.2d at 258.

But Watson merely speculates that additional recordings exist, arguing that "[g]iven the number of officers, and squad cars at the scene of the final apprehension, based upon the laws of chance alone, it would be reasonable to expect at least one squad car camera would contain images of the final physical apprehension of the Plaintiff, and reflect what force was and was not used [ ] during his detention and arrest." (Pl.'s Resp. 2.) Therefore, at this juncture, Watson presents no evidence that additional recordings were even created, let alone that they were destroyed or not preserved in bad faith. *See Park*, 297 F.3d at 615; *S.C. Johnson & Son, Inc.*, 695 F.2d at 258; *cf. LaSalvia v. City of Evanston*, No. 10 C 3076, 2011 WL 5867967, at *4-5 (N.D. Ill. Nov. 21, 2011) (finding, even when defendants admitted recordings were destroyed, that plaintiff had not met his burden of producing sufficient evidence to argue his entitlement to an adverse inference before a jury when the reason for the destruction of the recordings was unclear).

Accordingly, Defendants' motion is DENIED to the extent it seeks to prevent Watson from inquiring into whether additional recordings were generated and asking appropriate follow-

up questions, but GRANTED to preclude Watson, at this point, from making any spoliation arguments or seeking to raise the inference that spoliation occurred. If, at trial, testimony is elicited that suggests additional recordings were generated, but then destroyed or not preserved, Watson may seek to be relieved of this part of the Order.

*C. Medical Opinions Offered by Non-Medical Opinion Witnesses or Laypersons (No. 8)*

Defendants also move to exclude any medical opinions, diagnoses, or treatment discussions offered by non-medical opinion witnesses or laypersons, arguing that such testimony would be based on speculation, conjecture, and lack of expertise and inadmissible under Federal Rule of Evidence 701. (Defs.' Mot. in Limine 3.) In response, Watson contends that, at a minimum, he can testify from his personal knowledge about the injuries he experienced during his apprehension, the treatment he was given for those injuries, and whether any physical pain, injuries, or conditions existed prior to his encounter with Defendants. (Pl.'s Resp. 3.) Moreover, Watson argues that lay witnesses can also testify as to the physical injuries they observed on his face and body immediately following his arrest and should be allowed to confirm any indications of physical pain they saw first-hand. (Pl.'s Resp. 3.)

Under Federal Rule of Evidence 701, a lay witness may offer opinion testimony to the extent that it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Therefore, a lay witness is entitled to testify about his "own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010). He "cannot, however, offer medical opinions that require scientific, technical, or other specialized knowledge," "give any complex medical

7

diagnoses or opine on any long term medical conditions." *Id*. (citation and internal quotation marks omitted).

Consequently, Watson may testify about his own perception of his physical and mental health, before and after the incident. This includes recounting any pain, fear, or anxiety he experienced during those times. *See Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (allowing plaintiff to describe pain resulting from attack where there is "no . . . complicated question of medical causation"); *United States v. Cravens,* 275 F.3d 637, 640 (7th Cir. 2001) (allowing lay opinion testimony to establish existence of drug or alcohol problem); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196-98 (3d. Cir. 1995) (recognizing lay testimony as to health as "quintessential Rule 701 opinion testimony"); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir. 1983) (permitting plaintiff's testimony as to his own medical symptoms). Similarly, other witnesses may testify about their observations regarding Watson's condition before and after his arrest. *See Hauschild v. Powers*, No. 09-015-CJP, 2011 WL 2560229, at *1 (S.D. Ill. June 28, 2011) (noting that lay witnesses can testify about events which they perceived, such as the pain the plaintiff experienced or an observation that his knee was swollen); *Frazier v. Ind. Dep't of Labor*, No. IP 01-198-C-T/K, 2003 WL 21254567, at *2 (S.D. Ind. Mar. 24, 2003) (stating that "the Plaintiff's lay witnesses may testify about their firsthand observations of his emotional distress and mental anguish and any physical manifestations attributed to such distress and anguish").

No witness, however, shall be permitted to opine that the arrest proximately caused Watson's mental and physical health problems or offer a medical diagnosis of his alleged injuries. *Cravens*, 275 F.3d at 640 ("Although a lay person may readily observe a [health] problem, the *causation* of a mental disease or defect is a more technical medical determination such that a

8

court would find expert testimony particularly useful to its ultimate decision." (emphasis in original)); *see also Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish plaintiff's claim that secondhand smoke caused his symptoms). Watson can only lay the groundwork for the jury to infer causation by his testimony, and testimony from other witnesses, about his present health conditions and whether they appeared prior to the incident. *Hendrickson*, 589 F.3d at 892-93 (plaintiff may describe the altercation and any ensuing pain or suffering he experienced at that time); *Frazier*, 2003 WL 21254567, at *3 (noting that non-expert testimony which allows an inference to be drawn that Plaintiff's emotional distress and mental anguish was caused by the disputed incident is admissible).

Accordingly, Defendants' motion is GRANTED with respect to evidence or testimony addressing the causation of Watson's alleged injuries, but DENIED as to permissible lay testimony regarding Watson's perceptions—and those of other witnesses—of his physical and mental health before and after the incident.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion *in limine* (Docket # 57) is GRANTED, and Defendants' motion *in limine* (Docket # 58) is GRANTED IN PART and DENIED IN PART as set forth herein. It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution

each and every one of their witnesses to strictly follow these instructions.

 SO ORDERED.

 Enter for the 27th day of August, 2013.

                S/Roger B. Cosbey
                Roger B. Cosbey,
                United States Magistrate Judge